UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARCEL THOMPSON                          CIVIL ACTION

VERSUS                                   NO. 19-10371

ROBERT TANNER, WARDEN                    SECTION "B"(2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

I.     FACTUAL BACKGROUND

The petitioner, Marcel Thompson, is a convicted inmate currently incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[2] On January 29, 2015, Thompson was charged by bill of information in St. Tammany Parish with

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2] Rec. Doc. No. 5.

possession with intent to distribute cocaine and possession of a weapon by a convicted felon.[3] On February 19, 2015, he entered a not guilty plea.[4] The Louisiana First Circuit Court of Appeal summarized the facts established at trial as follows:

> In November of 2014, with the assistance of a confidential informant, Deputy Christopher Comeaux, an expert in street-level narcotics with the St. Tammany Parish Sheriff's Office (STPSO), led an investigation into the defendant's possible involvement in the street-level narcotic drug trade. On November 4, 2014, Deputy Comeaux, who at the time was assigned to the DEA task force, and officers of the Slidell Police Department (SPD) participated in the monitoring of a narcotics sale between the defendant and the confidential informant.
>
> The transaction consisted of the informant purchasing approximately two hundred dollars' worth of cocaine from the defendant in an area referred to as Brownsvillage Road in Slidell. The officers met the informant at a prearranged location, the informant was searched, fitted with a "Kel" audio monitoring device (body wire), and given documented funds. The informant contacted the defendant and directed him to the area of Brownsvillage Road near Dixie Road, and the officers followed the informant to the location where the transaction would take place. The informant made contact with the occupant of a small red sedan as the informant turned onto Dixie Road and was then instructed to proceed to Edwards Street. Due to the layout of the terrain (no shoulder of the road or driveway), the police were unable to establish visual surveillance without being detected; thus, they set up surveillance in the area and monitored the situation through the audio monitoring device worn by the informant. Once the officers discerned that the transaction was complete, they trailed the two vehicles (the one being operated by the informant and the red sedan) from Edwards Street and down Brownsvillage Road. Other officers intercepted the informant while Deputy Comeaux remained with the red sedan, which turned into a gas station on the comer of Brownsvillage Road and U.S. Highway 11.

---

[3]St. Rec. Vol. 1 of 10, Bill of Information, 1/29/15 (as amended 4/5/16).

[4]St. Rec. Vol. 1 of 10, Minute Entry, 2/19/15; Arraignment Transcript, 2/19/15.

Deputy Comeaux, dressed in plain clothes and driving an unmarked vehicle, positioned his vehicle at one of the gas pumps facing the business, which provided him with an unobstructed view of the red sedan as he observed an individual, identified by Detective Comeaux as the defendant, exit the passenger side and enter the store. Deputy Comeaux photographed the defendant and the sedan as the defendant was outside of the vehicle on the passenger side. As officers of the SPD collected the cocaine from the controlled buy, Deputy Comeaux terminated the surveillance shortly after observing the defendant.

On November 13, 2014, the STPSO conducted another controlled buy from the defendant using the same confidential informant and the same methodology. The informant and the police met at a predetermined location, a surveillance team proceeded to the Tumblebrook Street area (where the defendant was observed on a previous date), the informant called the defendant, and the police were directed to 313 Tumblebrook Street in Slidell. The police listened as the transaction was completed inside of the residence and subsequently established visual as well as audio surveillance as they followed the informant and the defendant off-site to a nearby gas station. After the defendant and the informant departed, Detective Comeaux followed the informant to the prearranged location, conducted a search of the vehicle and the informant, and obtained the purchased narcotics. The suspected cocaine was field tested, submitted to the lab for further testing, and tested positive for cocaine. Using a database that keeps records of incidents in St. Tammany Parish, referred to as a Computer Automated Dispatch (CAD) search, the police determined that the residence located at 36271 Edwards Street belonged to Barbara Thompson, the defendant's mother. They further determined that the residence at 313 Tumblebrook Street was the defendant's main residence.

On November 20, 2014, the police obtained a search warrant for both residences, and the warrants were executed (with SWAT team assistance at the Tumblebrook Street residence) during the early morning hours on the following day. The defendant was not home at the time of the search of the Tumblebrook Street residence; however, present was his girlfriend Sanita Thomas, along with their small children. During the search of the defendant's residence, the police recovered a .45 caliber semi-automatic handgun (wrapped in black t-shirts) from the top shelf of the master bedroom closet, which was used for male clothing and was believed to be the defendant's personal closet. Further, a plastic baggy of suspected marijuana was recovered from a chest of drawers in the master

bedroom, along with a partially burnt, hand-rolled cigarette suspected to contain marijuana, and rolling papers were recovered from the nightstand.[5] Further located in the master bedroom was a jar of creatine, which, according to Deputy Comeaux, is often used by cocaine dealers as a filler to stretch the amount of cocaine in order to increase profits.

The search of the residence located at 36271 Edwards Street, led by Lieutenant Danny Fonte of the STPSO, began after Deputy Comeaux gave word that the Tumblebrook residence was secure. Corporal Joseph Fourtunia, Deputy Jason Walden, and Corporal Justin Williams of the STPSO assisted in the execution of the search warrant. The officers noted that a bag of suspected marijuana was located inside of a blanket on the top of a bed, a partially burnt, hand-rolled cigarette suspected to contain marijuana was located in an ashtray next to the bed, and rolling papers were recovered. The officers further recovered from a kitchen utensil drawer, numerous baggies of a white powdered substance, a razor blade from the kitchen counter, transparent plastic bags (fold top and Ziploc), and a digital scale. A money counter was located on the master bedroom floor.[6]

After the search at the Tumblebrook residence was completed, Deputy Comeaux proceeded to the Edwards Street residence. Deputy Comeaux took custody of the recovered evidence and interviewed the three occupants present at the time, the defendant's mother (Barbara Thompson), the defendant's adult daughter (Marcia Thompson), and the defendant's daughter's boyfriend (Keith Douglas). While the defendant was not initially present at the Edwards Street residence, he arrived while the police were still at the scene. Shortly after his arrival, the defendant was escorted to the master bedroom, agreed to give a recorded interview wherein he was advised of his <u>Miranda</u> rights (which he indicated that he understood), and admitted to owning the gun and to selling drugs to provide for his children. After his recorded confession, the defendant was placed under arrest and transported to the Covington Law Enforcement Complex where he was re-advised of his rights, executed a waiver of rights form, and made additional statements.

---

[5]Footnote 2 in original: "Sanita Thomas claimed ownership of the hand-rolled cigarette and rolling papers in a written statement."

[6]Footnote 4 in original: "Further, a bag of suspected narcotics was recovered from the defendant's mother's purse."

State v. Thompson, No. 2016-KA-1348, 2017 WL 1755594, at *1–3 (La. App. 1st Cir. May 2, 2017); State Record Volume 7 of 10, Louisiana First Circuit Court of Appeal Opinion, 2016-KA-1348, pp. 2–6, May 2, 2017.

Thompson was tried before a jury on April 4 through 8, 2016, and found guilty on Count One of the lesser offense of possession of cocaine and guilty as charged on Count Two, felon in possession of a weapon.[7] At an April 28, 2016 hearing, the state trial court denied Thompson's motions to set aside the verdict and for new trial.[8] At the hearing, Thompson admitted being a second felony offender in response to the State's multiple offender bill as to Count Two.[9] The court then sentenced Thompson to five years in prison on Count One and 40 years as a multiple offender on Count Two to be served without benefit of parole, probation or suspension of sentence.

---

[7]St. Rec. Vol. 1 of 10, Trial Minutes, 4/5/16; Trial Minutes, 4/6/16; Trial Minutes, 4/7/16; Trial Minutes, 4/8/16; Jury Verdict (count 1), 4/8/16; Jury Verdict (count 2), 4/8/16; St. Rec. Vol. 2 of 10, Trial Transcript, 4/5/16; St. Rec. Vol. 3 of 10, Trial Transcript (continued), 4/5/16; Trial Transcript, 4/6/16; St. Rec. Vol. 4 of 10, Trial Transcript (continued), 4/6/16; Trial Transcript, 4/7/16; St. Rec. Vol. 5 of 10, Trial Transcript (continued), 4/7/16; Trial Transcript, 4/8/16; St. Rec. Vol. 6 of 10, Trial Transcript (continued), 4/8/16.

[8]St. Rec. Vol. 1 of 10, Sentencing Minutes, 4/28/16; Motion to Set Aside Jury Verdict and for New Trial, 4/28/16; Trial Court Order, 5/5/16; St. Rec. Vol. 6 of 10, Sentencing Transcript, 4/28/16.

[9]St. Rec. Vol. 1 of 10, Sentencing Minutes, 4/28/16; Reasons for Sentencing, 8/8/16; St. Rec. Vol. 6 of 10, Sentencing Transcript, 4/28/16.

On July 12, 2016, Thompson submitted pro se a motion for leave to appeal his convictions.[10] The state trial court construed the motion as a post-conviction request for an out-of-time appeal, granted the request and appointed him counsel.[11]

On direct appeal, Thompson's appointed counsel asserted three errors:[12] (1) The state trial court erred when it failed to grant the defense's motion for mistrial based on the prosecutor's prejudicial comment. (2) The state trial court erred when it admitted evidence of marijuana belonging to another person. (3) The state trial court erred when it denied the motion for new trial because the evidence was insufficient to support the verdict. Thompson also filed a pro se supplemental brief in which he asserted two errors:[13] (1) The state trial court erred when it admitted into evidence his statement made while he knowingly was intoxicated. (2) The state trial court erred when it admitted into evidence his statement made while under duress.

On May 2, 2017, the Louisiana First Circuit affirmed Thompson's convictions, habitual offender adjudication and sentences.[14] The court held that the claim challenging the admissibility of the marijuana was procedurally defaulted for failure to make a

---

[10]St. Rec. Vol. 1 of 10, Motion to Appeal, 7/27/16 (dated 7/12/16).

[11]St. Rec. Vol. 1 of 10, Trial Court Order, 7/29/16.

[12]St. Rec. Vol. 7 of 10, Appeal Brief, 2016-KA-1348, 11/22/16.

[13]St. Rec. Vol. 7 of 10, Pro Se Appeal Brief, 2016-KA-1348, 12/26/16.

[14]Thompson, 2017 WL 1755594, at *1; St. Rec. Vol. 7 of 10, 1st Cir. Opinion, 2016-KA-1348, 5/2/17.

contemporaneous objection as required by La. Code Evid. art. 103(A)(1) and La. Code Crim. P. art. 841.[15] The court further found in the alternative that the claim and the remaining claims were meritless.

On May 30, 2017, Thompson submitted a writ application to the Louisiana Supreme Court seeking only review of the three claims asserted by his counsel on direct appeal.[16] On May 11, 2018, the Louisiana Supreme Court denied the writ application without stated reasons.[17]

Thompson's convictions and sentences became final ninety (90) days later, on August 9, 2018, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999), cert. denied, 529 U.S. 1099 (2000) (period for filling for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

---

[15]Thompson, 2017 WL 1755594, at *10; St. Rec. Vol. 7 of 10, 1st Cir. Opinion, 2016-KA-1348, p. 21, 5/2/17.

[16]St. Rec. Vol. 8 of 10, La. S. Ct. Writ Application, 17-KO-1199, 7/12/17 (dated 5/31/17).

[17]State v. Thompson, 241 So.3d 1011 (La. 2018); St. Rec. Vol. 8 of 10, La. S. Ct. Order, 2017-KO-1199, 5/11/18.

On August 27, 2018, Thompson through different counsel filed a motion to amend or correct the sentence based on changes in Louisiana's habitual offender sentencing laws.[18] At a January 11, 2019 hearing, the state trial court denied the motion.[19]

Thompson's counsel appealed that ruling to the Louisiana First Circuit.[20] On May 13, 2019, the court dismissed the appeal because denial of the motion to correct was not an appealable judgment.[21] The court granted Thompson additional time to file an application for writ of review properly.

On September 3, 2019, the Louisiana First Circuit denied the subsequent writ application as procedurally improper under La. App. R. 2-18.7 and 4-9.[22] The court again granted Thompson an extension to November 2, 2019, properly to file a writ application. He complied and on December 6, 2019, the court denied the writ application.[23]

---

[18]St. Rec. Vol. 9 of 10, Motion to Amend and/or Correct Sentence, 8/27/18.

[19]St. Rec. Vol. 9 of 10, Hearing Transcript, p. 2, 1/11/19; see also Supplemental Memorandum, 9/4/18; State's Response, 10/19/18; Rebuttal Brief, 11/2/19; St. Rec. Vol. 10 of 10, Minute Entry, 1/11/19.

[20]St. Rec. Vol. 9 of 10, Motion for Appeal, 1/30/19; Notice of Lodging, 2019-KA-0469, 4/12/19.

[21]St. Rec. Vol. 9 of 10, 1st Cir. Order, 2019-KA-0469, 5/13/19.

[22]State v. Thompson, No. 2019-KW-0798, 2019 WL 4235976, at *1 (La. App. 1st Cir. Sep. 3, 2019).

[23]State v. Thompson, No. 2019-KW-1378, 2019 WL 6655618, at *1 (La. App. 1st Cir. Dec. 6, 2019).

II.    FEDERAL HABEAS PETITION

On March 20, 2019, Thompson filed a petition for federal habeas corpus relief in the United States District Court for the Middle District of Louisiana asserting three grounds for relief: (1) The evidence was insufficient to support the verdict. (2) Denial of the motion for mistrial and the motion to suppress was prejudicial because the prosecutor was allowed to convince the jury that petitioner lived on Edwards Street[24] and that he gave a free and voluntary confession to police. (3) The prosecutor's improper opening comment that petitioner sold drugs to "people's children" prejudiced the jury and denied him a fair trial. The case was eventually transferred to this court.[25]

The State filed a response in opposition to Thompson's petition asserting that the claims are meritless and that the state courts properly denied relief.[26] Thompson filed a reply to the State's opposition reasserting his arguments.[27]

III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

---

[24]Thompson's claim that he did not live at the Edwards Street house also was part of his argument to the state courts that the evidence was insufficient to support the verdict.

[25]See Rec. Doc. Nos. 2, 3 and 5.

[26]Rec. Doc. No. 14.

[27]Rec. Doc. No. 15.

including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996,[28] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Thompson's petition, which, for reasons discussed below, is deemed filed on March 18, 2019.[29] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419–20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record shows that Thompson's federal habeas petition was timely and no claim is in procedural default. I disagree with the State's suggestion that Thompson exhausted review of all of his claims. His second claim suggests that the state trial court erred by denying a "motion for mistrial" related to the introduction of

---

[28]The AEDPA was signed into law on that date and did not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[29]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of the Middle District received and filed Thompson's petition on March 20, 2019. After transfer, the case was opened in this court on June 3, 2019, when Thompson paid the filing fee. Thompson dated his signature on the original deficient petition on March 18, 2019. This is the earliest date appearing in the record on which he could have presented his pleadings to prison officials for mailing to a federal court. The federal mailbox rule still applies even if the filing fee is paid. Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002).

"junk mail" evidence seized from the Edwards Street house. No such claim or argument was presented to the state courts as required for exhaustion. Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519–20 (1982)). Nevertheless, the claim is meritless and can be addressed without further exhaustion. 28 U.S.C. § 2254(b)(2). For the following reasons, Thompson is not entitled to relief.

IV.   STANDARDS OF A MERITS REVIEW

A.   CLAIMS REVIEWED BY THE STATE COURTS

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419–20 (citing 28 U.S.C. § 2254(b) and ©).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state

court's decision "'was contrary to, or involved an unreasonable application of, clearly

established [Supreme Court precedent.]'" <u>Penry v. Johnson</u>, 215 F.3d 504, 507 (5th Cir.

2000) (quoting <u>Miller v. Johnson</u>, 200 F.3d 274, 280–81 (5th Cir. 2000)), <u>aff'd in part,

rev'd in part on other grounds</u>, 532 U.S. 782 (2001) (brackets in original); <u>Hill</u>, 210 F.3d

at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard

as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts. Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

<u>Williams v. Taylor</u>, 529 U.S. 362, 412–13 (2000); <u>Penry</u>, 532 U.S. 782, 792–93 (2001)

(citing <u>Williams</u>, 529 U.S. at 405–08); <u>Hill</u>, 210 F.3d at 485. The "critical point" in

determining the Supreme Court rule to be applied "is that relief is available under

§ 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a

clearly established rule applies to a given set of facts that there could be no 'fairminded

disagreement' on the question." <u>White v. Woodall</u>, 572 U.S. 415, 427 (2014) (citing

<u>Harrington v. Richter</u>, 562 U.S. 86, 103 (2011); <u>Knowles v. Mirzayance</u>, 556 U.S. 111,

122 (2009)). "Thus, 'if a habeas court must extend a rationale before it can apply to the

facts at hand,' then by definition the rationale was not 'clearly established at the time of

the state-court decision.'" Id. at 426 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24–25 (2002)) (citations omitted; brackets in original). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24–25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

B.    CLAIMS NOT ADDRESSED ON THE MERITS BY THE STATE COURTS

The AEDPA's deferential standard of review under Section 2254(d) and Williams, 529 U.S. at 362, applies only to claims adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d). To the extent Thompson's second claim was not properly exhausted and presents issues not addressed by the state courts, this court utilizes a different standard of review. With respect to claims that are not fully adjudicated on the merits in state court, the deferential AEDPA standards of review do not apply. Cullen v. Pinholster, 563 U.S. 170, 185–86 (2011); Henderson v. Cockrell, 333 F.3d 592, 597 (5th

Cir. 2003). Instead, federal courts review those claims under pre-AEDPA de novo standards of review. Id. at 598 (citing Jones v. Jones, 163 F.3d 285, 299–300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); Carty v. Thaler, 583 F.3d 244, 253 (5th Cir. 2009). I will consider Thompson's second claim challenging "junk mail" evidence de novo as necessary.

V.    SUFFICIENCY OF THE EVIDENCE

Thompson alleges that the evidence was insufficient to support the verdict because he was charged with possession of cocaine with intent to distribute and was not charged with "constructive possession" of cocaine. Thompson argues that "constructive possession" was not a responsive verdict, and his charge required proof of the exercise of dominion and control over the cocaine, which he did not have. He also argues that he established a reasonable hypothesis of innocence because the defense evidence showed he did not live at the Edwards Street address where the drugs and gun were found, and he was intoxicated and under duress when he spoke with police.

The Louisiana First Circuit considered this claim on direct appeal. Applying the standards in Jackson v. Virginia, 443 U.S. 307 (1979), and related state case law, the court held that based on the evidence, including Thompson's confession, it was reasonable for the jury to conclude that the State proved beyond a reasonable doubt, "and to the exclusion of every reasonable hypothesis of innocence," that he was guilty of

14

possession of cocaine and possession of a firearm by a convicted felon.[30] This was the last reasoned opinion on the claim. See Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale . . . then presume that the unexplained decision adopted the same reasoning."); Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

As an initial matter, Thompson urges this court to vacate his conviction because he presented an alternative hypothesis for his innocence and the conviction was based on circumstantial evidence with no corpus delicti to support the alleged confession. Louisiana law allows proof of a crime by both direct and circumstantial evidence. "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. § 15:438. However, on federal habeas corpus review, the court does not apply this state law "reasonable hypothesis" standard, and instead must apply the Jackson standard. Gilley v. Collins, 968 F.2d 465, 467 (5th Cir. 1992) (citing Schrader v. Whitley, 904 F.2d 282, 284 (5th Cir. 1990)). To the extent petitioner relies

---

[30]Thompson, 2017 WL 1755594, at *6; St. Rec. Vol. 7 of 10, 1st Cir. Opinion, 2016-KA-1348, p. 14, 5/2/17.

on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the <u>Jackson</u> standard to be applied instead of a sufficiency of the evidence test. . . . Ultimately, all evidence, both direct and circumstantial, must be sufficient under <u>Jackson</u> to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." <u>State v. Porretto</u>, 468 So.2d 1142, 1146 (La. 1985); <u>accord</u> <u>State v. Williams</u>, 693 So.2d 204, 208 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." <u>State v. Maxie</u>, 614 So.2d 1318, 1321 (La. App. 3d Cir. 1993); <u>accord</u> <u>Williams</u>, 693 So.2d at 208. Thus, a conviction may constitutionally rest on sufficient evidence "even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." <u>Gibson v. Collins</u>, 947 F.2d 780, 783 (5th Cir. 1991).

In addition, Louisiana's "corpus delicti" doctrine, which requires evidence to corroborate a confession in order to prove a crime occurred, is a state law doctrine that is not constitutionally mandated. <u>Lemons v. Cain</u>, 339 F. App'x 494, 497 (5th Cir. 2009) (citing <u>West v. Johnson</u>, 92 F.3d 1385, 1393 (5th Cir. 1996) (same as to Texas law)). Instead, "in challenges to state conviction under 28 U.S.C. § 2254, only <u>Jackson v. Virginia</u> need be satisfied, even if state law would impose a more demanding standard of proof." <u>West</u>, 92 F.3d at 1394 (quoting <u>Schrader</u>, 904 F.2d at 284) (brackets omitted). <u>Jackson</u> remains the appropriate standard of review for this federal habeas court.

16

Under <u>Jackson</u>, a federal habeas court addressing a sufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. <u>Jackson</u>, 443 U.S. at 319; <u>Williams v. Cain</u>, 408 F. App'x 817, 821 (5th Cir. 2011); <u>Perez v. Cain</u>, 529 F.3d 588, 594 (5th Cir. 2008). To determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. <u>Perez</u>, 529 F.3d at 594 (citing <u>Jackson</u>, 443 U.S. at 324 n.16).

The court's consideration of the sufficiency of the evidence extends only to what was presented to the factfinder at trial. <u>See</u> <u>McDaniel v. Brown</u>, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under <u>Jackson</u>); <u>Johnson v. Cain</u>, 347 F. App'x 89, 91 (5th Cir. 2009) (quoting <u>Jackson</u>, 443 U.S. at 324) (<u>Jackson</u> standard relies "upon the record evidence adduced at the trial"). Review of the sufficiency of the evidence, however, does <u>not</u> include review of the <u>weight</u> of the evidence or the <u>credibility</u> of the witnesses, because those determinations are the exclusive province of the jury. <u>United States v. Young</u>, 107 F. App'x 442, 443 (5th Cir. 2004) (citing <u>United States v. Garcia</u>, 995 F.2d 556, 561 (5th Cir. 1993)); <u>see</u> <u>Jackson</u>, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). All credibility choices and conflicting

17

inferences must be resolved in favor of the verdict. Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the factfinder. Weeks v. Scott, 55 F.3d 1059, 1062 (5th Cir. 1995); Alexander v. McCotter, 775 F.2d 595, 598 (5th Cir. 1985). "The Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact. Perez, 529 F.3d at 594; Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995). This court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent. Miller, 200 F.3d at 281.

During Thompson's trial, the jury heard testimony and received evidence establishing that on November 4, 2014, a DEA task force, including St. Tammany Sheriff's deputies and Slidell police officers, used a confidential informant ("CI") to make a purchase of $200 of cocaine from Thompson at a residence on Edwards Street in the Slidell area.[31] On November 5, 2014, officers had Thompson under surveillance at

---

[31]St. Rec. Vol. 3 of 10, Trial Transcript, pp. 771–72 (Deputy Christopher Comeaux), 4/6/16.

313 Tumblebrook Street and saw him get into a vehicle and again drive to the same Edwards Street house.[32]

On November 13, 2014, the officers arranged another purchase from Thompson by the same CI.[33] Thompson instructed the CI to meet him at 313 Tumblebrook Street. From there, Thompson directed the CI to follow him to a nearby gas station on Kingspoint Boulevard where the sale was completed.[34]

The officers' investigation revealed that 36271 Edwards Street, where the first sale took place, was the residence of Barbara Thompson, petitioner's mother.[35] The Tumblebrook Street address was Thompson's residence.[36] In the early morning hours of November 21, 2014, officers executed a search warrant at the Tumblebrook Street address.[37] The officers found Thompson's girlfriend and several of their small children. Thompson was not at the house.

---

[32]St. Rec. Vol. 4 of 10, Trial Transcript (continued), p. 779 (Deputy Comeaux), 4/6/16.

[33]Id. at 782 (Deputy Comeaux).

[34]Id. at 784–85 (Deputy Comeaux).

[35]Id. at 789 (Deputy Comeaux)

[36]Id. at 789–90 (Deputy Comeaux).

[37]Id. at 797, 799–801 (Deputy Comeaux).

During the search of the master bedroom, the officers found male clothing in the closet and dresser drawers.[38] Hidden in the men's clothing, the officers found an Asher .45 caliber semi-automatic handgun with seven rounds of ammunition.[39] A small bag of marijuana was found in a dresser drawer.[40] On the nightstand, the officers found papers bearing Thompson's name and address, including several pieces of mail, a hotel receipt and a document from the Louisiana Department of Public Safety and Corrections.[41] The officers also found a jar of creatine, a men's dietary supplement often used to cut or stretch cocaine to maximize sale profits.[42] The officers seized from the master bedroom a partially burnt, hand-rolled marijuana cigarette and rolling papers.[43] Thompson's girlfriend claimed ownership of some of the marijuana and paraphernalia but advised the officers that the gun belonged to Thompson.[44]

---

[38] Id. at 821, 824–25 (Deputy Comeaux).

[39] Id. at 821-823, 829–30 (Deputy Comeaux).

[40] Id.

[41] Id. at 823–24 (Deputy Comeaux).

[42] Id. at 825 (Deputy Comeaux).

[43] Id. at 826–28 (Deputy Comeaux).

[44] Id. at 1039, 1042 (Deputy Comeaux).

That same morning, other officers executed a search warrant at the Edwards Street address.[45] Thompson was not present, but the officers located his mother, his daughter, and his daughter's boyfriend in the house.[46] In the house, the officers found mail addressed to Thompson, a gun, marijuana, 17 to 18 grams of cocaine, plastic sandwich bags, a digital scale, a razor blade and a money counter.[47] The three people present at the house denied any connection to the drugs and paraphernalia.[48] Thompson's mother told the officers that Thompson would stay at the house and have friends over from time to time.[49]

The officers had Thompson's mother and daughter contact him to come to the house. When he arrived, he was read the warnings required by Miranda v. Arizona, 384 U.S. 436 (1966), and he waived his constitutional rights.[50] The jury heard the recorded statement made by Thompson to police at the house.[51]

---

[45]Id. at 833 (Deputy Comeaux).

[46]Id. at 833–34 (Deputy Comeaux).

[47]Id. at 836, 838, 859 (Deputy Comeaux); St. Rec. Vol. 5 of 10, Trial Transcript (continued), pp. 1102, 1103 (Corporal Joseph Fourtunia), pp. 1116–17, 118 (Deputy Jason Walden), pp. 1138, 1140, 1142 (Corporal Justin Williams), pp. 1160, 1163–64, 1166 (Lieutenant Daniel Fonte).

[48]Id. at 1015-16, 1021–22 (Deputy Comeaux).

[49]Id. at 1022 (Deputy Comeaux).

[50]St. Rec. Vol. 4 of 10, Trial Transcript (continued), p. 863 (Deputy Comeaux), 4/6/16.

[51]Id. at 877.

The jury also heard testimony that after his arrest and transport to the Covington Law Enforcement Complex, Thompson signed a written waiver of rights form.[52] In an unrecorded statement, Thompson admitted to officers that he regularly sold crack cocaine and marijuana and kept a marijuana stash at his mother's home on Edwards Street.[53] The arresting officer noted in his report that Thompson appeared to have been slightly intoxicated but did not smell of alcohol, did not have slurred speech and walked in a normal manner.[54] At trial, the jury also heard testimony and received evidence that Thompson was previously convicted of two counts of possession of narcotics, and that the fingerprints taken in that case matched those of Thompson taken at trial.[55]

A.    POSSESSION OF COCAINE

Although Thompson was charged with possession with intent to distribute cocaine, he was convicted of the responsive verdict of possession of cocaine. Under Louisiana law, possession of a controlled substance "is the lesser included offense of possession with intent" to distribute that drug. State v. Ioventi, 238 So.3d 496, 504 (La. App. 4th Cir. 2018) (citing La. Rev. Stat. § 40:967(A), (C)). Louisiana law provides that

---

[52]Id. at 877–80 (Deputy Comeaux).

[53]Id. at 883–86 (Deputy Comeaux).

[54]Id. at 1034 (Deputy Comeaux).

[55]St. Rec. Vol. 5 of 10, Trial Transcript (continued), pp. 1213–20 (Deputy Lauren Ingle), 4/7/16.

possession of a narcotic is "specifically included as a responsive verdict to the charge of possession with intent to distribute." Id. at 504 (citing La. Code Crim. P. art. 814(47)).

In Louisiana, it is unlawful for a person knowingly or intentionally to possess a Schedule II controlled dangerous substance, which includes cocaine. La. Rev. Stat. § 40:967(C); La. Rev. Stat. § 40:964, Schedule II(A)(4). Possession exists when the defendant exercised either actual or constructive possession of the cocaine. State v. Jones, 985 So.2d 234, 241 (La. App. 5th Cir. 2008). Actual possession occurs when the person has direct physical contact with and control of the object. State v. Bright, 860 So.2d 196, 205 (La. App. 5th Cir. 2003). A person has constructive possession when the drugs are under his dominion and control even if not on his person. State v. Manson, 791 So.2d 749, 761 (La. App. 5th Cir. 2001).

Thompson argues that the State did not prove that he was in actual or constructive possession of the cocaine because he did not live in the Edwards Street house and his confession was made under duress while he was intoxicated. The jury, however, heard more than sufficient evidence to establish that Thompson had constructive possession of the cocaine seized from the Edwards Street house. Contrary to his claim, there was no need for the bill of information actually to charge Thompson with constructive possession, because the nature of the possession, either actual or constructive, is an evidentiary guide not a separate charge.

23

Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include the defendant's (a) knowledge that drugs were in the area, (b) relationship with the person found to be in actual possession, (c) access to the area where the drugs were found, (d) recent drug use and (d) physical proximity to the drugs. State v. Toups, 833 So.2d 910, 912 (La. 2002). Guilty knowledge, as an essential component of constructive possession, may be inferred from the circumstances of the case. State v. Pigford, 922 So. 2d 517, 521 (La. 2006).

Thompson's own statements to police established his knowledge that drugs were in the Edwards Street house. Thompson made the initial sale of cocaine to the CI at the Edwards Street house. The house where the cocaine was seized was his mother's home. Witness testimony confirmed that Thompson had a close relationship with his mother and had a regular presence at the house. The police located items, such as mail, inside the home that were connected to Thompson. Thompson even inquired of the officers if they had found the "good" stash of marijuana he kept at his mother's house.

Viewing the evidence in the light most favorable to the State, the jury had more than sufficient evidence to establish beyond a reasonable doubt that Thompson knowingly and intentionally had constructive possession of the cocaine. The state courts' denial of relief on this claim was not contrary to or an unreasonable application of Jackson. Thompson is not entitled to relief on this claim.

B.    FELON IN POSSESSION OF A WEAPON

24

Thompson was also convicted as a felon in possession of a weapon for the handgun seized from his closet on Tumblebrook Street. Under La. Rev. Stat. § 14:95.1(A), it is unlawful for any person who has been convicted of certain enumerated felonies, including possession of narcotics, to possess a firearm. To convict a defendant of possession of a firearm by a convicted felon, the State must prove beyond a reasonable doubt the possession of a firearm, a previous conviction of an enumerated felony, that ten years have not elapsed since completion of the sentence, and a general intent to commit the offense. La. Rev. Stat. § 4:95.1; State v. Husband, 437 So. 2d 269, 271 (La. 1983).

The general intent element may be established through the actual or constructive possession of the firearm. Constructive possession occurs when the firearm is subject to the person's dominion and control even if the control is only temporary in nature or the control is shared with another person. State v. Johnson, 870 So.2d 995, 998–99 (La. 2004); State v. Plain, 752 So. 2d 337, 340–41 (La. App. 1st Cir. 2000).

The evidence and testimony outlined above established that Thompson lived and established his residency at the Tumblebrook Street house where the weapon was found hidden in men's clothing in the master bedroom closet. Louisiana law does not require the State to present evidence that the defendant's fingerprints were on the weapon. See Johnson, 870 So.2d at 1000. As with constructive possession of narcotics, the State need only prove that the circumstances establish a knowing relationship between access to or location of the gun and the defendant.

25

In Thompson's case, the State presented evidence that Thompson resided at the Tumblebrook Street house with his girlfriend and some of their children, the gun was located in his closet with his clothing and the gun belonged to him. The jury also heard evidence that Thompson had a prior 2008 conviction for possession of narcotics.

Viewing the evidence in the light most favorable to the State, it was reasonable for the jury to find Thompson guilty of constructive possession of the weapon. The state courts' denial of relief on this claim was not contrary to or an unreasonable application of Jackson. Thompson is not entitled to relief on this claim.

## VI.    DENIAL OF MOTION FOR MISTRIAL

Thompson alleges that denial of the defense's motion for mistrial was prejudicial because it allowed the State to use "junk mail" evidence to convince the jury that he lived at the Edwards Street and Tumblebrook Street houses and that he voluntarily gave the recorded confession.[56] Thompson does not indicate to which motion for mistrial he is referring. His counsel urged several motions for mistrial during the trial and none related specifically to the introduction of the mail found at either home or to the voluntariness of the recorded statement.[57] In fact, Thompson's counsel did not object during trial to the

---

[56]Rec. Doc. Nos. 5-1, p. 5; Rec. Doc. No. 15, p. 2.

[57]See e.g., St. Rec. Vol. 3 of 10, Trial Transcript (continued), pp. 735, 4/5/16 (request for mistrial when State said Thompson sold drugs to "other people's children."); St. Rec. Vol. 4 of 10, Trial Transcript (continued), p. 847, 4/6/16 (request for mistrial when the jury could see photographs in Deputy Comeaux's hands on the witness stand); St. Rec. Vol. 6 of 10, Trial Transcript (continued), p. 1434, 4/8/16 (request for mistrial when the prosecutor asked Thompson's mother about her prior felony conviction for obstruction of justice related to Thompson's prior drug case).

admissibility of any of the mail evidence presented by the State. In addition, while his counsel challenged the admissibility of the recorded statement in a pretrial motion to suppress, his counsel did not move for mistrial related to the statement. His claims are factually unsupported in that regard.

Nevertheless, for the following reasons, even when broadly construed to challenge the introduction of the evidence, Thompson's claims are meritless and do not warrant federal habeas relief.

A.    "JUNK MAIL" EVIDENCE

As to the challenge to the "junk mail," Thompson did not urge such a claim in the state courts; thus, consideration of this unexhausted claim is de novo. 28 U.S.C. § 2254(b)(2). Thompson's arguments in support of this claim are related to those in support of his challenge to the sufficiency of the evidence and the jury's decision to find the State's evidence credible. The sufficiency of the evidence to support the jury's verdict is reviewed above. The jury's decision to accept and find credible the State's evidence over that offered by the defense was reasonable and within its authority as fact-finder; that decision must not be second-guessed on habeas corpus review. See Jackson, 443 U.S. at 319; Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); United States v. Ramos-Garcia, 184 F.3d 463, 465 (5th Cir. 1999) (courts do not "second-guess[ ] the weight or credibility given the evidence by the jury.").

27

Even if the state trial court should have excluded or granted a mistrial related to the admissibility of the "junk mail," review of such a ruling would not be appropriate here. A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); see also Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991). The United States Fifth Circuit has specifically addressed alleged state court error involving the denial of mistrials:

> Even if the court's refusal to declare a mistrial was a violation of Louisiana law, we, as a federal habeas court, are without authority to correct a simple misapplication of state law; we may intervene only to correct errors of constitutional significance.

Smith v. Whitley, 1994 WL 83777, at *1 (5th Cir. Mar. 3, 1994). This court will not consider whether Louisiana law would have required the granting of a mistrial.

Instead, the court's habeas review is limited to review of evidentiary errors that violated the Due Process Clause and rendered the criminal proceedings fundamentally unfair. Lisenba v. People of the St. of Cal., 314 U.S. 219, 236–37 (1941); Peters v. Whitley, 942 F.2d 937, 940 (5th Cir.1991) (habeas review is proper only to determine whether a state trial court's error was so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right). Thompson has identified no error by the state trial court that rendered his trial fundamentally unfair. He simply alleges that the

28

State's use of the mail to establish his connection with the houses was prejudicial. He claims prejudice because it allowed the State to prove constructive possession and convince the jury of his guilt.

The court can find no state law evidentiary rule that would prevent the prosecution from admitting pieces of mail as circumstantial evidence of a defendant's residency. Similarly, there is no support for Thompson's contention that the evidence was prejudicial simply because it tended to prove his guilt by mere circumstance. Louisiana law recognizes that all "inculpatory evidence is 'prejudicial' to a defendant, especially when it is 'probative' to a high degree." State v. Germain, 433 So.2d 110, 118 (La. 1983). All evidence that proves guilt is necessarily "prejudicial" to the defense, because it proves that the defendant committed a crime. However, this does not mean that the evidence was unduly prejudicial for due process purposes. To the contrary, "[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180 (1997).

In Thompson's case, the mail was not "unfairly prejudicial" because it was used as proof of the specific offense. Evidence of his residency and connection with the houses where the drugs and gun were found was a required element or "proof specific" to the offenses charged.

29

Thus, the mere presentation of the mail evidence was not per se error, and Thompson has alleged no other constitutional error in the presentation of the "junk mail." As required by due process and the right to confront those against him, Thompson's counsel had the opportunity and aggressively challenged the accuracy of the names and addresses on the mail through cross-examination of the State's witnesses and through defense witnesses, including Thompson's mother. Thompson has shown no constitutional violation arising from the State's reliance on and introduction of the mail to prove his connection with the houses. He is not entitled to relief on this claim.

B.    <u>DENIAL OF MOTION TO SUPPRESS RECORDED STATEMENT</u>

Broadly construed, Thompson's claims are that the state trial court erred by denying the pretrial motion to suppress his recorded statement. He argues that the recorded statement was prejudicial because it allowed the State to mislead the jury into believing that the statement was voluntarily made. He claims, however, that he was intoxicated at the time and unaware that he was being recorded, an assertion made here for the first time.

Thompson's counsel filed a pretrial motion to suppress his statements as involuntary and under duress. On April 4, 2016, the state trial court conducted a hearing on Thompson's motion to suppress the recorded statement taken by Deputy Christopher

Comeaux at the Edwards Street house.[58] Deputy Comeaux testified that while at the Edwards Street house executing the search warrant, Thompson's family members were asked to call and request that Thompson come to the house to speak with police.[59] Upon his arrival, Thompson appeared upset by the law enforcement presence out of concern for his mother's health. Deputy Comeaux recorded a conversation with Thompson during which he explained that the search had located guns and drugs at the house.[60] Thompson was advised of his <u>Miranda</u> rights. He indicated his understanding and agreed to speak with the officers.[61] Thompson was calm and compliant during the discussion.[62] Thompson at first did not seem willing to admit ownership of the drugs.[63] Deputy Comeaux explained to Thompson that if he did not answer questions about the items they found, the officers would be forced to arrest the other people present in the house.[64] He ultimately answered the officers' questions and asked questions himself about the

---

[58]St. Rec. Vol. 2 of 5, Hearing Transcript, 4/4/16.

[59]<u>Id.</u> at 25.

[60]<u>Id.</u> at 26.

[61]<u>Id.</u> at 26–27.

[62]<u>Id.</u> at 30.

[63]<u>Id.</u> at 61–62.

[64]<u>Id.</u> at 55, 62.

investigation. After he admitted owning the drugs and gun, Thompson was placed under arrest and taken to the Covington Law Enforcement Complex.[65]

While there, Thompson again was read his <u>Miranda</u> warnings and completed a waiver of rights form.[66] The form included waiver of his right to remain silent and his acknowledgment that anything he said could be used against him. Although no formal statement was taken at the complex, Thompson voluntarily continued to converse with officers.[67] He was at ease as he laughed and joked with the officers present. Thompson told officers that he preferred to sell crack cocaine, not powdered cocaine.[68] He explained that he would cut or put additives into powdered cocaine and cook it into crack for resale. He also asked Deputy Comeaux if the officers had found his "good" stash of high-grade marijuana hidden at his mother's house.[69]

Deputy Comeaux testified that Thompson spoke freely and voluntarily without promise, coercion or threat.[70] He described the conversation as "a good old time" with

---

[65] <u>Id.</u> at 30, 32.

[66] <u>Id.</u> at 33-35.

[67] <u>Id.</u> at 36.

[68] <u>Id.</u> at 37.

[69] <u>Id.</u>

[70] <u>Id.</u> at 38.

everyone "laughing and joking."[71] Deputy Comeaux acknowledged that Thompson may

have been intoxicated when he arrived at the house based on Thompson's comment hat

he had been at a casino and drinking before he returned to his mother's house.[72] Deputy

Comeaux recalled and noted in his report that he did not smell alcohol on Thompson or

observe other signs such as slurred speech or problems walking.[73]

The court heard the testimony of Thompson's mother and other relatives about the

events that occurred before Thompson arrived at the Edwards Street address. Thompson

waived his right to remain silent and testified at the hearing against his counsel's advice.

In answering the prosecutor's questions, Thompson claimed that he had no independent

recollection of anything that occurred on November 21, 2014, and only knew what he

was told by his mother and family.[74] He stated that the last thing he remembered was

going to a barber shop and waking up some time later in the Covington jail.[75] He did not

recall being at a casino or his mother's house or any mistreatment by the police.

Before the start of trial on April 5, 2016, the state trial court denied the motion to

suppress finding that Thompson was advised of his rights and made the statements freely

---

[71]Id. at 37–38.

[72]Id. at 58.

[73]Id. at 66–67.

[74]Id. at 102.

[75]Id. at 106–07.

and voluntarily.[76] Although Thompson's counsel indicated an intent to seek immediate review of the ruling, no writ application was ever filed and the statements and related testimony were presented at trial.[77]

In his pro se direct appeal brief to the Louisiana First Circuit, Thompson asserted that his statements should have been suppressed because he was intoxicated and under "fear, duress, and threat of officers taking his mother, daughter, and girlfriend to jail."[78] The court found the claim meritless and that no error was made in denial of the motion to suppress. The court concluded, as did the lower court, that Thompson was lucid and responsive throughout the interview, and the urging to tell the truth made by the deputy was not an impermissible promise, threat or coercion.[79] This was the last reasoned opinion on the claim. Wilson, 138 S. Ct. at 1192.

The admissibility of a confession or inculpatory statement is a mixed question of law and fact. Miller v. Fenton, 474 U.S. 104, 112 (1985); ShisInday v. Quarterman, 511 F.3d 514, 522 (5th Cir. 2007). A federal court on habeas review must respect the state court's determination of voluntariness as long as it was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[76]St. Rec. Vol. 2of 10, Trial Transcript, pp. 382–83, 4/5/16.

[77]Id.

[78]St. Rec. Vol. 7 of 10, Pro Se Appeal Brief, 2016-KA-1348, 12/26/16.

[79]Thompson, 2017 WL 1755594, at *12; St. Rec. Vol. 7 of 10, 1st Cir. Opinion, 2016-KA-1348, pp. 26–27, 5/2/17.

Supreme Court." 28 U .S.C. § 2254(d)(1); Barnes v. Johnson, 160 F.3d 218, 222 (5th Cir.

1998). In doing so, a federal habeas court must afford a presumption of correctness to

state courts' findings of fact, if they are fairly supported by the record. Miller, 474 U.S.

at 117. Similarly, the habeas standards of review oblige federal judges to respect

credibility determinations made by the state court trier of fact. Pemberton v. Collins, 991

F.2d 1218, 1225 (5th Cir.1993) (citing Sumner v. Mata, 455 U.S. 591, 597 (1982)); Self

v. Collins, 973 F.2d 1198, 1204 (5th Cir. 1992); see Miller, 474 U.S. at 112 (noting that

subsidiary questions such as whether the police engaged in coercive tactics are afforded

the presumption of correctness). However, if the underlying facts as determined by the

state courts indicate the presence of some coercive tactic, the impact that factor had on

the voluntariness of the confession is a matter for independent federal determination and

is ultimately a legal determination. Miller, 474 U.S. at 117; ShisInday, 511 F.3d at 522.

Under Miranda, 384 U.S. at 436, a statement made by a person in custody is

inadmissible unless the person was informed that he has the right to have an attorney

present during questioning, that he has the right to remain silent, and that anything that

he says may be used against him. Id., 384 U.S. at 444–45. These rights may be waived

as long as the waiver is knowing and voluntary. Moran v. Burbine, 475 U.S. 412, 421

(1986).

Two inquiries determine whether an accused has voluntarily and knowingly

waived his Fifth Amendment privilege against self-incrimination. Moran, 475 U.S. at

421; <u>Soffar v. Cockrell</u>, 300 F.3d 588, 592 (5th Cir. 2002). First, waiver of the right must be voluntary and not the product of intimidation, coercion or deception. <u>Moran</u>, 475 U.S. at 421. Second, the waiver or relinquishment must be made with full awareness of the nature of the right being waived. <u>Id</u>.

In assessing voluntariness, "trickery or deceit is only prohibited to the extent it deprives the suspect 'of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.'" <u>Soffar</u>, 300 F.3d at 596 (quoting <u>Moran</u>, 475 U.S. at 424). Thus, coercive police conduct is a necessary prerequisite to a finding that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession. <u>Carter v. Johnson</u>, 131 F.3d 452, 462 (citing <u>Colorado v. Connelly</u>, 479 U.S. at 157, 163–67 (1986)). The court must consider the "totality of all the surrounding circumstances - both the characteristics of the accused and the details of the interrogation." <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 224 (1973).

In this case, Thompson does not contest the fact that he was read his rights on two occasions, that he understood his rights or that he waived his rights before making the two inculpatory statements. Instead, Thompson claims that the state courts should have suppressed his statements because he had been drinking at the casino. He also claims that while giving the statement at the Edwards Street house, he was threatened by Deputy Comeaux that his mother, daughter and girlfriend would be arrested. In addition, for the

first time in any court, Thompson also alleges that he was not advised that the interrogation at the Edwards Street house was being recorded.

In light of his claims and in accordance with Jackson v. Denno, 378 U.S. 368 (1964), the state courts reviewed the recorded statement and conducted a full evidentiary hearing on the admissibility of the inculpatory statements. The state trial court heard testimony from the investigating officer, Thompson, and several witnesses and received other evidence, including the recorded oral waiver of rights and statement and the written waiver of rights form later signed by Thompson at the police station.

The same evidence and testimony was presented at trial and considered on direct appeal by the Louisiana First Circuit. The state trial court also instructed the jury that they were to "determine the weight or value that the statement should be accorded, if any." The court further instructed the jury as follows:[80]

> In making that determination, you should consider all the circumstances under which the statement was made. In making that determination, you should consider whether the statement was made freely and voluntarily, without the influence of fear, duress, threats, intimidation, inducement or promises.

The state courts and the jury obviously found credible Deputy Comeaux's testimony that Thompson was not coerced, promised or threatened to make his statement. The courts resolved that Deputy Comeaux had informed Thompson that his mother,

---

[80]St. Rec. Vol. 6 of 10, Trial Transcript (continued), p. 1502, 4/8/16.

daughter and others at the scenes had denied ownership of the narcotics and guns at the two houses. Thompson was also made aware that if he denied ownership, then the other persons would be arrested for what was found in their respective homes. As resolved by the state courts, the deputy's statement was not a threat, promise or unduly coercive. Instead, it was a fact underlying the circumstances of having found guns and narcotics in both houses in that, if Thompson did not claim ownership, someone would be arrested and held accountable for the drugs and guns. The courts also credited Deputy Comeaux's testimony and report, which indicated that Thompson knew he was being recorded and that he was not impaired by any alcohol consumption.

On federal habeas review, the court must presume that these factual determinations made by the state courts were correct because they are supported by the record, including the relevant portions of the statements provided in the transcripts. The presumption of correctness applies to the state courts' factual findings that the officers did not coerce, promise or threaten Thompson and that Thompson made the inculpatory statements after he twice was advised of his Miranda rights that he understood his rights and that he twice voluntarily waived those rights before making his statements. Pemberton, 991 F.2d at 1225.

To overcome the presumption of correctness as to these findings, Thompson must rebut them by clear and convincing evidence, which he has not done. In his federal habeas petition, Thompson merely repeats the conclusory allegations of threats, coercion

and promises he asserted on direct appeal and which were fully addressed by the state courts. He has provided no factual or legal support for his claim that he did not know he was being recorded. I can locate no federal precedent that would have required Deputy Comeaux to notify Thompson that the conversation was being recorded for Thompson's waiver or statement to be admissible.

The transcripts of the suppression hearing and trial more than adequately support the state courts' determinations that Thompson's inculpatory statements were free and voluntary. This court on habeas corpus review must accept as conclusive the state courts' factual determinations that the challenged inculpatory statement was voluntary and was not a product of threat or coercion. For these reasons, the denial of the motion to suppress, denial of relief on appeal and the use of the inculpatory statement at trial were not contrary to or an unreasonable application of Supreme Court law. Thompson is not entitled to relief on this claim.

VII.    <u>PROSECUTOR'S COMMENTS</u>

Thompson alleges that he was denied a fair trial when the prosecutor commented in his opening statement that Thompson sold drugs to "people's children," when there was no such crime charged or evidence to be presented that drugs were sold to minors. Thompson claims that the state trial court should have granted a mistrial based on the prejudicial comment.

The prosecutor made the following statement during his opening statement:[81]

Ladies and Gentlemen, you are going to hear evidence that the defendant deals in drugs, that the cocaine was his, the gun was his. You are going to hear evidence, and you are going to come to the conclusion that the defendant's contributions to this community – unfortunately, with so much potential and so much life – has not been to be a positive role model for his children, not a positive role model to this community. But instead of taking care of his kids, you are going to hear evidence that he deals poison to other people's children.

At that point, defense counsel lodged an objection and a conference was held at the bench away from the jury. Thompson's counsel made the following argument to the judge:[82]

I let the first kid reference characterizing him as a bad person, as a person who – there is not going to be any evidence that says he deals poison to kids in the community. He's making an inference, and he's speculating something. He's putting something that just telling the jury he's a bad person, convicted, and he knows we are not supposed to appeal to emotions. He knows that's part of the jury instructions. That's unfair. He's making the process unfair. It's prejudicial to my client.

The court confirmed that there would be no evidence of drugs being sold to children, although the prosecutor responded that everyone is someone's child. The court sustained the objection and instructed the jury to disregard the prosecutor's comment. Thompson's counsel then asked the court also to grant a mistrial.[83] The court denied the

---

[81]St. Rec. Vol. 3of 10, Trial Transcript, p. 733, 4/6/16.

[82]Id. at 734.

[83]Id. at 735.

request stating that the prosecutor's comment did not rise to the level of a mistrial and arguably was "fair game."[84] However, out of an abundance of caution, the court would remedy the comment by admonition for the jury to disregard the comment. The court then announced that the objection was sustained and stated that "the jury is instructed to disregard the last statement made by the attorney for the State."[85]

The court also instructed the jury both before opening statements and at the end of trial that the opening statement by the prosecutor was not evidence.[86] The court instructed the jury that "[a]s jurors, you are not to be influenced by sympathy, passion, prejudice, or public opinion."[87]

On direct appeal, Thompson's appointed counsel asserted that the state trial court erred by denying the motion for mistrial because the prosecutor's comment was unfounded and prejudicial. The Louisiana First Circuit held that mistrial was not mandated under Louisiana law because the comment did not address inadmissable other crimes evidence or the defendant's failure to testify.[88] The court reiterated the instructions given to the jury about the purposes of opening statements, and resolved that

---

[84]Id.

[85]Id. at 736.

[86]Id. at 726; St. Rec. Vol. 6 of 10, Trial Transcript (continued), p. 1499, 4/8/16.

[87]St. Rec. Vol. 6 of 10, Trial Transcript (continued), p. 1513, 4/8/16.

[88]Thompson, 2017 WL 1755594, at *8; St. Rec. Vol. 7 of 10, 1st Cir. Opinion, 2016-KA-1348, p. 17, 5/2/17.

the "fleeting" comment did not contribute to the verdict.[89] This was the last reasoned

opinion on the claim. Wilson, 138 S. Ct. at 1192.

A prosecutor's comment does not present a claim of constitutional magnitude in

a federal habeas action unless it is so prejudicial that the trial was rendered fundamentally

unfair in violation of the Due Process Clause. Jones v. Butler, 864 F.2d 348, 356 (5th Cir.

1988). "[I]t is not enough that the prosecutors' remarks were undesirable or even

universally condemned. The relevant question is whether the prosecutors' comments so

infected the trial with unfairness as to make the resulting conviction a denial of due

process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citations and quotations

omitted); accord Rogers v. Lynaugh, 848 F.2d 606, 608 (5th Cir. 1988); Bell v. Lynaugh,

828 F.2d 1085, 1095 (5th Cir. 1987). The prosecutor's remarks must be evaluated in the

context of the entire trial. Greer v. Miller, 483 U.S. 756, 765–66 (1987) (citing Darden,

477 U.S. at 179); Kirkpatrick v. Blackburn, 777 F.2d 272, 281 (5th Cir. 1985).

Fifth Circuit precedent requires a two-step analysis when reviewing claims of

prosecutorial misconduct. United States v. Wise, 221 F.3d 140, 152 (5th Cir. 2000);

United States v. Lankford, 196 F.3d 563, 574 (5th Cir. 1999). First, the court must

determine whether the prosecutor made an improper remark. Wise, 221 F.3d at 152. "If

an improper remark was made, the second step is to evaluate whether the remark affected

---

[89]Id. at *8; St. Rec. Vol. 7 of 10, 1st Cir. Opinion, 2016-KA-1348, pp. 17–18, 5/2/17.

the substantial rights of the defendant." Id. A habeas petitioner "must demonstrate that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." Jones, 864 F.2d at 356; accord Hogue v. Scott, 874 F. Supp. 1486, 1533 (N.D. Tex. 1994). Under this test, a petitioner must demonstrate that the comment rendered his trial "fundamentally unfair" by showing "a reasonable probability that the verdict might have been different had the trial been properly conducted." Rogers, 848 F.2d at 609 (footnote and citations omitted).

A claim of prosecutorial misconduct presents a mixed question of law and fact. Brazley v. Cain, 35 F. App'x 390, 2002 WL 760471, at *4 n.4 (5th Cir. Apr. 16, 2002) (citing United States v. Emueqbunam, 268 F.3d 377, 403–04 (6th Cir. 2001); Jones v. Gibson, 206 F.3d 946, 958 (10th Cir. 2000); United States v. Noriega, 117 F.3d 1206, 1218 (11th Cir. 1997); United States v. Spillone, 879 F.2d 514, 520 (9th Cir. 1989)). Under AEDPA standards of review, the federal habeas court must determine whether the denial of relief was contrary to or an unreasonable application of Supreme Court law.

I cannot conclude that the single comment by the prosecutor, as to which the state trial court sustained the objection and admonished the jury, so infected the trial as a whole that it was rendered fundamentally unfair. The prosecutor made a single comment, and the behavior was neither persistent nor pronounced. There was no presentation of evidence to perpetuate the concept of drugs being sold to minors, although the evidence

did establish that Thompson regularly sold drugs. When viewed as a whole, the record contains ample evidence to prove, beyond a reasonable doubt, that Thompson was guilty of possession of cocaine and possession of a weapon while having been previously convicted of a felony. The record contains no basis to conclude that the jury perceived an implication of guilt from the prosecutor's comment about "other people's children" or that the comment impacted the jury's verdict in light of the abundant evidence of guilt.

In the overall context of the trial, there is no indication of undue prejudice arising from the single comment by the prosecutor in opening remarks. The jury was immediately admonished to ignore the comment, and they were instructed that counsel's opening statements were not evidence. The record does not support Thompson's claim that the jury was prejudiced or that the verdict would have been different but for the isolated comment. The denial of relief by the state courts was not contrary to or an unreasonable application of federal precedent. Thompson is not entitled to habeas corpus relief on this claim.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Marcel Thompson's habeas corpus petition under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen

(14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[90]

New Orleans, Louisiana, this _____23rd_____ day of January, 2020.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[90]<u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.